# EXHIBIT A

**UNSECURED MASTER LOAN AGREEMENT**

This Unsecured Master Loan Agreement (this "**Agreement**") is made and entered into as of March 19, 2018 (the "**Effective Date**") between **Ari Jacoby**, an individual residing at the address set forth under such individual's name on the signature page hereto ("**Lender**") and **SRS Capital Funds, Inc.**, a corporation organized and existing under the laws of New York with its office at 333 Pearsall Ave, Suite 205 Cedarhurst, NY 11516 ("**Borrower**").

1. **MASTER LOAN AGREEMENT; SUPPLEMENTS.**

    1.1. MASTER LOAN AGREEMENT. On this date, and from time to time hereafter, Lender may, in its sole discretion, make Loans to Borrower. Borrower and Lender (collectively, the "**Parties**") hereby enter into this Master Loan Agreement which, together with the applicable Supplement(s) and other Loan Documents, shall govern each separate Loan and all Indebtedness between the Parties. Unless stated herein to the contrary elsewhere, the provisions of all Loan Documents are incorporated by reference herein as if stated in full. For value received, Borrower promises to pay to order of Lender all Indebtedness governed by this Agreement or from any Loan Document. Nothing herein shall be construed to obligate Lender to restructure or renew any unpaid balance, any part thereof, or to make any additional or future loans or financial accommodations to Borrower.

    1.2. SUPPLEMENTS. Each Loan made on and after the date of this Agreement will be evidenced by a "Promissory Note and Supplement to Unsecured Master Loan Agreement", in the form attached hereto as Exhibit A ("**Supplement**"). Each Supplement shall set forth the terms and conditions applicable to each Loan. All Supplements and attachments thereto, including all amendments, renewals, and restatements thereof, are incorporated by reference and made a part of this Agreement unless the contrary is stated in any Loan Document. In any conflict of terms between this Master Loan Agreement and any Supplement, the Supplement shall control, unless the contrary is specifically stated in the Supplement. Any amendment to this Master Loan Agreement shall control all Supplements, unless the contrary is stated in the amendment.

    1.3. HETER ISKA. The terms of this Agreement are subject to the *heter iska* attached hereto as Exhibit B.

2. **DEFINED TERMS.**

    "**Agreement**" means this Unsecured Master Loan Agreement, including all Supplements, attachments and other agreements incorporated by reference and all amendments, modifications, and restatements thereof.

    "**Indebtedness**" means all Loans, advances, and financial obligations of any kind owing by Borrower to Lender under this Agreement or any other Loan Document whether now existing or hereafter arising, absolute or contingent, due or to become due, and whether or not evidenced by any writing, this Agreement or any other Loan Document, and including all interest, charges, fees, expenses, and any other sum(s) chargeable to Borrower under this or any other Loan Document.

    "**Loan**" or "**Account**" means each loan, credit facility or other financial obligation evidenced by any Supplement.

    "**Loan Document**" means this Agreement, and any Supplement, guaranty, and any and all other documents or agreements executed in connection with this Agreement, any Loan or the Indebtedness, and all amendments, modifications, and restatements thereof.

3. **USE OF LOAN PROCEEDS.** Loans made hereunder are to be used by Borrower solely for its business, including merchant cash advances, and no portion thereof shall be used for personal, consumer, payment of salaries or for any other purpose.

4. **TAX WITHHOLDING.** Any and all payments by or on account of any obligation of Borrower under this Agreement shall be made without deduction or withholding for any taxes, except as required by applicable law. If any applicable law (as determined in the good faith discretion of Borrower) requires the deduction or withholding of any tax from any such payment by Borrower, then Borrower shall be entitled to make such deduction or withholding and shall timely pay the full amount deducted or withheld to the relevant governmental

1

authority in accordance with applicable law and shall provide Lender evidence of such payment; provided, that if such tax is an Indemnified Tax, then the sum payable by Borrower hereunder shall be increased as necessary so that after such deduction or withholding has been made Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made. Borrower shall use its commercially reasonable efforts, including providing Lender with the Lender documentation reasonably necessary therefor, to assist Lender in its efforts, if any, to recoup any lawfully recoverable amounts so deducted or withheld.

"**Indemnified Taxes**" means all stamp, court, documentary, intangible, recording, or filing taxes that arise from or are imposed upon any payment made under, from the execution, delivery, performance, or enforcement of this Agreement.

5. **DEFAULT.** A default on any Supplement or the Indebtedness is a default on this Master Loan Agreement. A default on this Master Loan Agreement or any Supplement shall, at Lender's option, also be a default on all Supplements and all the Indebtedness. Borrower is in default on this Master Loan Agreement, including any Supplement, under any one or more of the following circumstances (individually and collectively called an "**Event of Default**"): (a) Borrower or any guarantor fails to pay when due any Indebtedness or amount(s) owed under this Agreement or any other Loan Document and such failure continues for a period of five (5) consecutive business days; (b) Borrower materially breaches any term, condition or representation in this Agreement or in any other Loan Document and receives notice of such breach from Lender; (c) Borrower's written representation(s) to Lender in any Loan Document in connection with any Loan being untrue in any material respect as of the date made; or (d) Borrower's application for or consent to appointment of a receiver/custodian or trustee for itself or any of its assets, or an assignment for the benefit of creditors by, or commencement of any proceeding under any applicable bankruptcy or insolvency law by or against, Borrower.

6. **REMEDIES; WAIVER; LIQUIDATION.**

    6.1 REMEDIES. If an Event of Default occurs and is not cured within five (5) business days of Lender's provision to Borrower of written notice specifying the Event of Default, Lender shall have all rights, powers and remedies available under this Agreement, any other Loan Document, or provided by law or equity under applicable laws, including but not limited to: the right to declare, at Lender's option, all or any portion of the Indebtedness immediately due and payable, (all above collectively, "**Remedies**"). All Lender's Remedies: (a) may be exercised at any time by Lender, or from time to time, after the requisite written notice of an Event of Default; and (b) shall be in addition to any other rights or remedies provided by law or equity. Notwithstanding any of the forgoing to the contrary, upon the occurrence of an Event of Default under clause (d) of the definition thereof, all of the Indebtedness shall immediately become due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by Borrower.

    6.2 WAIVER. Lender's prior failure to require strict compliance with any provision of this Agreement shall not affect Lender's right to require strict compliance with such provision. Lender's suspension or waiver of an Event of Default shall not affect any other Event of Default or any of Lender's Remedies with respect to such other Event of Default. Lender's waiver or suspension of any rights under this Agreement, or Lender's grant of any consent to Borrower under this Agreement, shall be effective only if such waiver, suspension, or consent is in writing and only to the extent specifically set forth in such writing.

    6.3 LIQUIDATION. In the event of a liquidation or other dissolution of Borrower, equity holders of Borrower shall only be entitled to receive proceeds or other funds therefrom following the receipt by Lender of all Indebtedness owed from any Loan Document.

7. **REPRESENTATIONS AND WARRANTIES.** In addition to representations and warranties described in other Loan Documents, Borrower and Lender make the following representations and warranties to each other:

    **7A. BORROWER.**

    7A.1 FINANCIAL INFORMATION. Any written financial information furnished by Borrower to Lender is accurate in all material respects as of the date so furnished.

7A.2 <u>LEGAL ENTITY WARRANTY AND CERTIFICATION</u>.  Borrower is duly constituted under applicable laws and in good standing; Borrower has the power, authority, and appropriate authorization to enter into this Agreement and any other Loan Document in connection with any Loan; when executed, this Agreement and any other Loan Document shall be valid and legally binding on Borrower, except to the extent limited by the application of (a) the Bankruptcy Code of the U.S., and all other liquidation, conservatorship, bankruptcy, general assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization or similar debtor relief laws of the U.S. or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally, (b) general principles of equity or (c) principles of good faith and fair dealing.

**7B. LENDER.**

7B.1 Lender represents and warrants that he, she or it is an "accredited investor" as defined by Rule 501 under the Securities Act, and is capable of evaluating the merits and risks of this investment, has the ability and capacity to protect its own interests and has the professional sophistication or business experience to make such Loan due to its specialized training or business experience, familiarity with similar transactions or other involvement in the merchant cash advance, revenue based financing or similar small business financing industry (the "**Borrower Industry**"), and is capable of evaluating the merits and risks of providing this Loan and has the ability and capacity to protect its own interests.

7B.2 Lender acknowledges that the Borrower Industry is speculative and involves a high degree of risk and Lender attests that it can bear the economic risk involved in making the unsecured Loan.

7B.3 Lender has been given the opportunity to have, (i) legal representation and (ii) all agreements and documents reviewed by independent counsel and financial/tax advisors prior to execution.

7B.4 Lender is lending its own funds and has not borrowed funds to lend hereunder.

7B.5 Lender has been given the opportunity to ask questions of, and receive answers from, Borrower concerning the terms and conditions of this Agreement and other matters pertaining to the Borrower Industry, and has been given the opportunity to obtain any additional information which Borrower possesses or can reasonably acquire.

8. **FINANCIAL INFORMATION.** At Lender's reasonable request, subject to the restrictions and limitations further set forth in this Section and this Agreement, Borrower shall provide to Lender the following financial information on a mutually agreeable, reasonable basis:

    a. General information (but, for the avoidance of doubt, not including specific return rates/amounts, numbers or figures ("**Excluded Information**")) regarding the nature of Borrower's business activities and the type(s) of transactions engaged in by Borrower in its ordinary course of business, as of the date of its response to Lender's request;
    b. The aggregate number of current, active deals/transactions, if any, which Borrower is currently involved in its ordinary course of business as of the date of its response to Lender's request (other than Excluded Information);
    c. The names or other identifying information (other than Excluded Information) as to transactions, if any, which Borrower may be involved in for which it may have requested any particular Loan from Lender;
    d. The total current balance of Borrower's Indebtedness to Lender;
    e. Within ninety (90) days after the end of Borrower's fiscal year (which is a calendar year), a copy of Borrower's annual financial statements; and
    f. Within forty-five (45) days after the end of each fiscal quarter of Borrower, a copy of Borrower's balance sheet as of the end of such fiscal quarter.

Notwithstanding anything to the contrary contained herein, Lender understands that Borrower may be subject to certain contractual confidentiality restrictions which preclude and/or limit the disclosure of certain financial information that may otherwise be reasonably expected to be shared with Lender, and Lender hereby agrees that it is not entitled to any such restricted information, which for the avoidance of doubt, will at no time include items

d, e and f above. Lender hereby acknowledges that Borrower's provision of any financial information hereunder is for informational purposes only.

9. **REQUIRED ACTIONS.** While this Agreement is in effect Borrower will: (a) comply with all terms and conditions of all other Loan Documents executed in connection with this Agreement and (b) execute, deliver, file and or record such documents or instruments, or take such other actions, as may be reasonably required by Lender to effectuate the intention of this transaction, or to assure the enforceability of the Indebtedness, Note, or Loan Document, or to otherwise protect or enforce the rights of Lender thereunder.

10. **NOTICES.** Borrower shall promptly give written notice to Lender of: (a) any material enforcement action brought against Borrower by any governmental regulatory body or law enforcement authority or any material dispute between Borrower and any such authority or body; (b) any pending or threatened litigation or court proceeding brought against Borrower that would reasonably be expected to result in a material adverse change in Borrower's financial condition, (c) any material adverse change in Borrower's financial condition; and (d) the occurrence of any Event of Default, or any event that with a lapse of time or the giving of notice or both would become an Event of Default under any obligation of Borrower to Lender hereunder or under any other Loan Document.

11. **LOAN CHARGES.** If a law, which applies to this Agreement or any Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Agreement exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected which exceeded permitted limits will be refunded to Borrower, without interest thereon. Lender may choose to make this refund by reducing the principal Borrower owes under this Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

12. **CONFIDENTIALITY**. During the term of this Agreement and for a period of eighteen (18) months thereafter, Lender shall keep confidential and not disclose or make any use of, at any time, the existence or contents of this Agreement or the of the negotiations thereof, any trade secrets, knowledge, data or other confidential, secret or proprietary information of the Borrower relating to the Borrower's business, processes, knowledge, know how, business strategies, or other subject matter pertaining thereto (collectively "**Confidential Information**") that Lender may come across during such term; provided that the term "Confidential Information" shall not include information, technical data or know-how that is or becomes part of the public domain not as a result of any inaction or action of the Lender. Unless otherwise consented to in writing prior by Borrower, Lender shall not make any use of the Confidential Information for its own or other's direct or indirect use or benefit, deliver, reproduce, or in any way allow any such Confidential Information to be delivered to or used by any third parties without the specific direction or consent of a duly authorized representative of Borrower. The terms of this paragraph shall survive the termination or expiration of this Agreement.

13. **SUCCESSORS AND ASSIGNS.** This Agreement, any Supplement and all other Loan Documents are binding on Borrower's and Lender's successors and assignees. Borrower shall not assign this Agreement any Loan or Loan Document without Lender's prior written consent. Lender shall not assign this Agreement any Loan or Loan Document, or sell participations in respect of any of the forgoing, without Borrower's prior written consent.

14. **SEVERABILITY; COUNTERPARTS.** If one or more of the provisions of this Agreement or any other Loan Documents should be deemed or held to be invalid, illegal, unenforceable or against public policy in any respect, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired. To the extent any waiver of a right by Borrower hereunder may be contrary to applicable law, such waiver shall be deemed made to the extent allowed by such law. This Agreement may be signed in one or more counterparts which shall constitute one and the same Agreement.

15. **CAPTIONS.** Captions used in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of any term or provision. As used herein, the word "including" means "including without limitation" and/or "including but not limited to".

16. **APPLICABLE LAW.** This Agreement, any Loan Document(s) and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of New York State.

17. **ENTIRE AGREEMENT; AMENDMENTS MUST BE IN WRITING.** This Agreement and all other Loan Documents constitute the entire agreement between the Parties on the subject matter hereof; superseding all prior negotiations, communications, discussions, oral agreements, and promises concerning the Indebtedness or any Loan. This Agreement does not supersede any Loan Document(s) pertaining to other outstanding loan(s) of Borrower with Lender except as specified herein. This Agreement may be amended or modified only by a written instrument executed by Lender and Borrower.

18. **TERMINATION; PREPAYMENT; APPLICABILITY OF UNDERTAKINGS.**

    18.1. This Agreement may be terminated at any time upon the mutual written consent of both parties.

    18.2. Provided that no Loans or Indebtedness are still outstanding from Borrower to Lender pursuant to any Loan Document, either party may terminate this Agreement and all Loan Documents upon ten (10) business days prior written notice for any reason.

    18.3. Prepayment by Borrower of any Indebtedness shall not constitute termination of this Agreement unless specifically designated as such by Borrower in accordance with this Section. Any such prepayment shall be subject to the terms contained in and shall have the consequences specified in the applicable Supplement(s).

    18.4. For the avoidance of doubt, notwithstanding anything contrary contained herein, any and all undertakings, representations, warranties and/or other obligations of Borrower set forth in this Agreement shall only be applicable for so long as any Loan or Indebtedness is outstanding from Borrower to Lender. Once full repayment has been made, any failure of Borrower to adhere to said undertakings, representations, warranties and/or other obligations shall not constitute either an Event of Default or a breach of this Agreement.

*[Signature page follows]*

IN WITNESS WHEREOF, Borrower and Lender have executed this Unsecured Master Loan Agreement as of the Effective Date.

**SRS Capital Funds, Inc., as Borrower**

By: ___/s/ J Schulm_____
    Joseph Schulman, Chief Executive Officer

**Ari Jacoby, as Lender**

By: ___/s/ Ari Jac_____ 3/19/18
    Ari Jacoby
    Address:

6

Exhibit A

## PROMISSORY NOTE AND SUPPLEMENT
## TO UNSECURED MASTER LOAN AGREEMENT

This Promissory Note and Supplement (alternately, "**Note**" or "**Supplement**") to an Unsecured Master Loan Agreement dated as of the date hereof ("**MLA**") is made and entered into as of March 19, 2018 (the "**Supplement Date**") by and between the undersigned Borrower and Lender identified herein.

**1.    PROMISE TO PAY.** For value received, SRS Capital Funds, Inc. ("**Borrower**") promises to pay to the order of Ari Jacoby ("**Lender**") the principal sum of **Two Hundred Thousand Dollars ($200,000)** (the "**Principal**"), together with interest on the unpaid principal balance as specified below. All defined terms used in this Supplement shall have the same meaning as set forth in the MLA. All Indebtedness owed hereunder shall be payable only in lawful money of the United States of America.

- **1.1    LOAN.** On the terms and conditions set forth in the MLA and this Supplement, Lender agrees to advance the Principal amount to Borrower during the period set forth below. Amounts which are repaid by Borrower do not entitle Borrower to additional corresponding credit.

- **1.2    TERM.** The term of the Principal shall be from the date of this Supplement up to but not including the Maturity Date, or such later date as Lender may in its sole discretion authorize in writing.

**2.    REPAYMENT.**  Borrower shall repay the loan made hereunder as follows:

- **2.1    PRINCIPAL REPAYMENT; AUTOMATIC EXTENSION**: Borrower shall repay to Lender the Principal amount (made under this Supplement) by the thirteen (13) month anniversary of the Supplement Date (the "**Maturity Date**") or otherwise in connection with a termination of the MLA pursuant to the terms thereof; provided that, subject to Lender's right to request loan repayment at any point during the term as set forth in the last sentence of this Section 2.1, the Maturity Date, and the term of this Supplement, shall automatically renew for subsequent additional 12-month periods unless Borrower or Lender provides the other Party with at least ninety (90) days' prior written notice of its desire to have the Principal and unpaid interest thereon become due and payable at the upcoming Maturity Date. Lender may also request for the loan repayment in writing at any point during the term of the loan and Borrower shall repay the outstanding Principal as well as the pro-rated interest for such period, within ninety (90) days after receiving such notice.

- **2.2    INTEREST RATE**: Subject to the provisions set forth in the "Other Interest Terms" section hereunder, the interest rate in effect hereunder is **22%** per annum ("**Interest Rate**").

- **2.3    INTEREST REPAYMENT**: Borrower shall repay the interest which has accrued on the Principal amount (i.e. the principal amount of the loan(s) made under this Supplement) according to the installment schedule indicated below:

  [ ] **Monthly** – in twelve (12) equal consecutive monthly installments, with the first installment due beginning on the last day of the first full calendar month following the date of disbursement, and the last installment due on the Maturity Date.

  [ ] **Quarterly** – in four (4) equal quarterly installments, with the first installment due beginning on the last day of the third full calendar month following the date of disbursement, and the last installment due on the Maturity Date.

  [X] **Annually** – in one lump sum due on the Maturity Date.

- **2.4    REPAYMENT DUE ON BUSINESS DAY:** Notwithstanding anything to the contrary contained herein, in the event the due date designated above with respect to any amount, whether Principal or

interest or otherwise, falls on a day which is not a business day, then the due date for said amount shall be delayed until the next business day.

**3.    OTHER INTEREST TERMS.**

**3.1    GENERAL**. Interest will be charged on the entire unpaid Principal balance of this Note including payments not made when due and any other sums owing hereunder. Interest will be calculated on the basis of a 365-day year and the actual number of days in each month. Interest charges will begin on the date Lender disburses Principal and continue until the Indebtedness is repaid in full (including interest).

**3.2    INTEREST FOR OVERDUE PAYMENTS**. Any interest or other sum owed hereunder which is not paid when due shall be added to the outstanding principal balance of the Loan and such combined amount shall thereafter bear interest at the same rate as the principal portion of the Loan.

**4.    DEFAULT AND REMEDIES.** Borrower is in default on this Supplement only if an Event of Default occurs pursuant to the terms and conditions described in the MLA governing this Supplement. If a default occurs, Lender shall have all the Remedies described in the MLA.

**5.    PREPAYMENT; REAMORTIZATION; REFINANCE; INTEREST RATE CONVERSION**. A payment, in any amount, made in advance of the scheduled payment date is a "**prepayment**." If Borrower, in making a prepayment, intends the prepayment to be applied to reduce the Principal balance of the Note, Borrower must so inform Lender in writing accompanying the prepayment, provided that in the absence of any such notice all such amounts shall be applied first to any interest that is then due and payable and second to the unpaid Principal balance. Borrower may make a full or partial prepayment on any business day without paying a prepayment fee.

Upon the making of a partial prepayment, Borrower may request to have the amount of future installments (if any) reamortized over the remaining term of the Loan, but only if Borrower so notifies Lender at the time Borrower makes the partial prepayment.

**6.    BORROWER'S REPRESENTATION.** As of the date hereof, the representations of Borrower set forth in Section 7 of the MLA are true in all material respects.

**7.    HETER ISKA**. The terms of this Promissory Note are subject to the *heter iska* attached to the MLA as Exhibit B.

*[Signature page follows]*

IN WITNESS WHEREOF, Borrower and Lender have executed this Promissory Note and Supplement to Unsecured Master Loan Agreement the Supplement Date.

**SRS Capital Funds, Inc., as Borrower**

By: ___/s/ Schulman_____
Joseph Schulman, Chief Executive Officer

**Ari Jacoby, as Lender**

By: ___/s/ Ari Jacoby_____ 3/19/18
Ari Jacoby

Exhibit B

הסכם היתר עיסקא שנערך בין Joseph Schulman / SRS Capital Funds, Inc. [  ] להלן צד א'] ובין [ Ari Jacoby ] להלן צד ב' [.

הסכם זה יחול בין במקרה שצד א' יהיה הנותן וצד ב' המקבל ובין במקרה שצד ב' יהיה הנותן ולצד א' המקבל.
מוסכם בזה שכל הכספים שיתן הנותן למקבל או יתנו אחרים עבורו יהיו בתורת עיסקא כתיקון חז"ל, וברווחים יתחלקו הנותן והמקבל מחצה על מחצה ובהפסדים ח"ו ישא המקבל שליש והנותן שני שליש. ורשות ביד המקבל לתת לנותן סך מסוים כולל הטבות ומענקים כפי שהוסכם ביניהם. ומותר הרווחים של המקבל. אם אין די באופן זה לבטל חשש איסור ריבית הרי העיסקא כולה בתורת פקדון ביד המקבל ותהיה עליו אחריות רק כשומר שכר והנותן יקבל שמונים אחוז מהרווחים והמקבל יקבל עשרים אחוז מהרווחים בתורת שכר טירחא. ורשות ביד המקבל לתת לנותן סך כפי שהוסכם ביניהם, כולל הטבות ומענקים שיתן המקבל לנותן, ומותר הרווחים של המקבל.-------------
--
תנאי הנאמנות בעיסקא הם כפי תיקון מהר"ם ז"ל ואם לא תהיה אפשרות לברר ע"פ תיקון מהר"ם אזי אם יהיה בזה חשש איסור ריבית יהיה המקבל נאמן ע"י הצגת ספרי החשבונות המאושרים ע"י רואה חשבון בפני בי"ד רבני המוסכם על שני הצדדים בצירוף שני עדים כשרים ונאמנים ושבועה חמורה בנקיטת ספר תורה, ואם אין לו ספרי חשבונות ועדים כאמור או אם א"א להשביעו כאמור, המקבל ישלם לנותן סך כפי שהוסכם ביניהם, כולל הטבות ומענקים שיתן המקבל לנותן, ומותר הרווחים של מקבל.------------------
----לצורך העיסקא מקנה המקבל לנותן חלק בכל עסקיו הקיימים ו/או העסקים שעתיד הוא לעשות, והיינו בעסקים אשר אפשר לנותן לקנותם ע"פ דין תורה בנתינת הכספים ולחזור ולהקנותם למקבל בקבלת הכספים, ודוקא בעסקים שמותר להתעסק בהם ע"פ דין תורה [להוציא עסקים שיש בהם איסור כגון חשש ריבית או חילול שבת, וכן להוציא עסקים במאכלות אסורות, ולהוציא עסקים שיש בהם חשש חמץ, בכל ימות השנה], [להלן יכונו עסקים אלה בשם "עסקים הראויים ומתאימים לעיסקא"] במדה ויתעסק המקבל בכספים שניתנו לו מהנותן בדבר שאינו עיסקא כדין [וכן במקרה של התחייבויות של המקבל לנותן] יקנה המקבל לנותן חלק בשאר עסקיו הראויים ומתאימים לעיסקא או חלק בדירתו הפרטית [או בדירה אחרת שיש לו יפוי כח להקנות בה חלק לצורך עיסקא] וחלק זה יהיה העיסקא לפי התנאים המבוארים לעיל.------------------------------
--
גם במקרה שהעיסקא תהיה מכירה בהקפה או נתינת שירות או פעולה בהקפה ויהיה בה חשש איסור ריבית יהא החוב הזה בתורת עיסקא ביד המתחייב, והיינו שתמורת החוב יקנה המתחייב למוכר או לנותן השירות חלק בשאר עסקיו הראויים ומתאימים לעיסקא או בדירתו הפרטית.-------
כל הקנינים הנ"ל יעשהו בקנין המועיל ע"פ דין תורה [והיינו בקנין כסף, באופן המועיל ישיר בין המקבל לנותן או באופן של דין ערב, או בהנאת מלוה או בקנין סודר אשר יסדיר המקבל העיסקא].
מקבל העיסקא יתעסק בה באופן הטוב והמועיל לעיסקא.--------------------------------------
[מוסכם בזה בין הצדדים שכל נכס שיהיה שייך למקבל העיסקא והוקנה על ידו לנותן העיסקא לצורך העיסקא, אין לאחד הצדדים כח לכוף את הצד השני להחזירו למקבל העיסקא].------------
כל תשלום או הטבה אשר יתן מקבל העיסקא לנותן העיסקא גם לפני ההתעסקות יהיו נחשבים כתשלום על חשבון באופן המותר.------------------------------------------------------
וכן כל קבלת אחריות, שעבודים, משכונות , ערבויות וכו' יהיו רק באופן התואם את העיסקא מצד הלכות ריבית, ומוסכם בזה בין הצדדים שכל לשונות הלואה וריבית וכיו"ב הנזכרים בהסכמת שבין המקבל לבין הנותן בטלים, אלא כל עסקי הכספים הם אך ורק עפ"י ההסכם הזה. הסכם זה מבטל כל הסכם אחר בין הצדדים הנ"ל לגבי הכספים והתחייבויות הנ"ל בין אם נעשה ההסכם האחר לפני חתימת חוזה זה או אחריו.---------------
-------------------------------
ומוסכם בין הצדדים שגם אם לא יבין נותן העיסקא או מקבל העיסקא את ענין העיסקא אעפ"כ יהיו כל עניני הכספים כפופים להסכם זה.--------------------------------------------------
מוסכם בזה בין הצדדים שכל השאלות ההלכתיות הנוגעות להיתר עיסקא זה יוכרעו בבית דין מוסכים על שני הצדדים.--------------------------------------------------------------
הסכם זה מחייב גם בחוקי המדינה ומוסכם בין הצדדים ששום טענה לא תוכל לבטל הסכם זה לא בבי"ד של תורה ולא בערכאות.-----------------------------------------------------

כל זה נעשה ונגמר על דעת הצדדים בקנין גמור ושלם, כדין תורה וכתיקון חז"ל דלא כאסמכתא ודלא כטופסי דשטרי בביטול מודעות. ---------------------------------------------------
והכל שריר וקיים.
ובאנו על החתום היום   March 19, 2018

_____           _____   3/19/18
SRS Capital Funds, Inc. / Joseph Schulman        Ari Jacoby

11